UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EVELYN CLANTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2639** |
| **DARRYL VANNOY, WARDEN** | **SECTION "T"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.   Factual and Procedural Background

Petitioner Evelyn Clanton ("Clanton") is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On April 7, 2017, Clanton and her sister, Wynola C. Clanton ("Wynola"), were charged in a four count Bill of Information in Orleans Parish.[3] Clanton was charged with two counts of aggravated second degree battery using a metal pipe (counts one and two).[4] Wynola was charged with two counts (three and four) as principal to the aggravated second degree batteries charged against Clanton.[5] Both defendants entered not-guilty pleas on April 25, 2017.[6]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.
[2] ECF No. 3.
[3] St. Rec. Vol. 1 of 14, Bill of Information, 4/7/17.
[4] *Id*.
[5] *Id*.
[6] St. Rec. Vol. 1 of 14, Minute entry, 4/25/17.

The record reflects that, on February 19, 2017, adult siblings Tyrone and Delanda Garner attended a Mardi Gras parade in Uptown New Orleans with friends and family.[7] While leaving the parade, Delanda stopped to use the restroom at the home of the Brinsons located on Third Street. Clanton, her sister Wynola, and their mother were sitting on the front steps of the Brinson house. As she walked into the bathroom, Delanda overheard Wynola, "talking about slapping somebody." When Delanda exited the restroom, Wynola slapped her and a fight began, including Clanton's mother. In response, Tyrone stepped-in to stop Clanton's mother from hitting his sister, Delanda. When he turned around, Clanton hit him in the face with a pipe. Clanton then proceeded to hit Delanda in the face and arm with the pipe.

After the altercation was over, Clanton, Wynola, and their mother left the scene. Police and paramedics arrived and Delanda and Tyrone were transported to the hospital. Delanda suffered lacerations to her mouth, which required fifteen stitches. Her injuries also included two chipped teeth, one tooth "knocked . . . out," and a permanent scar under her nose. Tyrone required surgery for his nose, which was almost severed off of his face. Later, in an interview with police, Delanda identified Wynola's photograph as the person who slapped her. In addition, she identified Clanton's photograph as the person who hit her and Tyrone in the face with the pipe. Tyrone was unable to identify Clanton in a photographic lineup.

Approximately one week later, Delanda and Tyrone returned to the same area for another parade. Delanda saw Clanton nearby. Clanton approached Delanda to apologize for the incident. At that point, Delanda contacted the lead detective on the case, who came to the scene and arrested Clanton.

---

[7] The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Clanton*, 285 So.3d 31, 34 (La. App. 4th Cir. 2019); St. Rec. Vol. 4 of 14, 4th Cir. Opinion, 2019-KA-0316, pp. 2-3, 11/6/19.

On December 5, 2017, pursuant to a plea agreement, Wynola entered a guilty plea to an amended charge of battery on Delanda (count three) and the other count (four) against her was dismissed.[8] She was sentenced to six months in jail, which was suspended, and six months on inactive probation.[9] The Court also ordered Wynola to attend anger management classes and issued a "stay away" from the victims order through December 5, 2018.[10]

Clanton went to trial before a jury on June 12 and 13, 2018, and was found guilty as charged on both counts of aggravated battery.[11] At a July 12, 2018, hearing, the state trial court denied Clanton's motions for new trial and post-verdict judgment of acquittal.[12] On September 6, 2018, the court sentenced Clanton to serve concurrent terms of six years in prison on each count.[13]

On September 18, 2018, the State filed a multiple offender bill charging Clanton as a fourth felony offender and Clanton objected.[14] This Court has learned that the State ultimately withdrew the multiple bill on January 25, 2021.[15]

In the meantime, after the initial sentencing, Clanton appealed through appointed counsel to the Louisiana Fourth Circuit Court of Appeal asserting the following errors:[16] (1) the state trial court erred by admitting prior crimes evidence; (2) the trial court erred by allowing the State to

---

[8] St. Rec. Vol. 1 of 14, Bill of Information, 4/7/17 (as amended 12/5/17); Sentencing Minutes (Wynola Clanton), 12/5/17; St. Rec. Vol. 7 of 14 Plea Transcript (Wynola Clanton), 12/5/17.
[9] St. Rec. Vol. 1 of 14, Sentencing Minutes (Wynola Clanton), 12/5/17.
[10] *Id*.
[11] St. Rec. Vol. 1 of 14, Trial Minutes, 6/12/18; Trial Minutes, 6/13/18; St. Rec. Vol. 9 of 14, Trial Transcript, 6/12/18; St. Rec. Vol. 10 of 14, Trial Transcript, 6/13/18; St. Rec. Vol. 12 of 14, Voir Dire Transcript, 6/12/18.
[12] St. Rec. Vol. 1 of 14, Minute Entry, 7/12/18; Motion for New Trial, 6/27/18; Motion for Post-Verdict Judgment of Acquittal, 6/27/18; State's Answer, 7/10/18; State's Answer(2), 7/10/18; Trial Court Order (not dated); Trial Court Order, 7/12/18; Trial Court Order (2), 7/12/18; Trial Court Order (3), 7/12/18.
[13] St. Rec. Vol. 1 of 14, Sentencing Minutes, 9/6/18; Memorandum in Aid of Sentencing, 8/21/18; St. Rec. Vol. 10 of 14, Sentencing Transcript, 9/6/18.
[14] St. Rec. Vol. 1 of 14, Multiple Bill, 9/18/18; Defense Objection, 12/2/19; Minute Entry, 12/2/19.
[15] ECF No. 14 (Docket Master). The Court obtained a current copy of the Docket Master for Clanton's criminal case, Orleans Crim. Dist. Ct. Case No. 534-000.
[16] St. Rec. Vol. 3 of 14, Appeal Brief, 2019-KA-0316, 7/8/19.

introduce prior crimes evidence through inadmissible hearsay; and (3) the verdict by a six person jury violated Clanton's constitutional rights.

On November 6, 2019, the Louisiana Fourth Circuit affirmed the conviction, noting that the multiple bill was pending and that Clanton had not challenged her initial sentence in the appeal.[17] The Court found no merit in the claims asserted. The Court also addressed a claim challenging the state trial court's denial of a request for special jury instructions on self-defense and held the claim procedurally barred under La. Code Crim. Proc. 801 for lack of a contemporaneous objection.[18] Clanton did not seek review of this ruling in the Louisiana Supreme Court.

## II. Federal Petition

On October 2, 2020, after correction of certain deficiencies, the clerk of this Court filed Clanton's federal habeas petition in which he asserted the following claims:[19] (1) the procedural bar imposed by the Louisiana Fourth Circuit is inadequate to bar federal habeas review of her challenge to the jury instructions; (2) the state trial court's admittance of prior crimes evidence rendered her trial fundamentally unfair; (3) the state trial court erred by allowing the State to introduce prior crime evidence through inadmissible hearsay; and (4) the verdict by a six person jury violated Clanton's constitutional right to trial by a jury of twelve.

The State filed a response in opposition to Clanton's federal petition asserting that, despite her appeal of the conviction itself, her sentence was not final because of the pending multiple offender proceeding. The State contended that if she were to be resentenced under pending state court multiple bill proceeding, Clanton would still have state appeal rights to pursue. In addition,

---

[17] *Clanton*, 285 So.3d at 31 & 34 n.2; St. Rec. Vol. 4 of 14, 4th Cir. Opinion, 2019-KA-0316, pp. 1 & 2 at n.2, 11/6/19.
[18] This claim does not appear in the appellate brief in the record provided to this Court.
[19] ECF Nos. 3, 3-1.

the State also argued that review of Clanton's claims was not exhausted through the Louisiana Supreme Court. The State urged that this rendered the claims in procedural default because any effort to exhaust review now would be untimely. Clanton has not filed a reply to the State's opposition despite having been given an opportunity to do so.

### III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to Clanton's petition, which is deemed filed in this Court no later than September 21, 2020.[21] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As an initial matter, the State as alleged several preliminary issues, including Clanton's failure to exhaust and her technical exhaustion and resultant procedural default. The Court will address the State's technical defenses before proceeding to the failure to exhaust defense. The Court also recognizes, as briefly eluded to by the State, that the finality of Clanton's conviction *and* sentence are in question for purposes of applying § 2254 and the AEDPA.

---

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after AEDPA's effective date submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Clanton dated her signature on the form petition and attached documents on September 21, 2020. This is the earliest date appearing in the record on which she could have presented the pleadings to prison officials for mailing to a court. The fact that she paid the filing fee does not alter application of the federal mailbox rule. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

For purposes of the AEDPA, "both [the] conviction and sentence" must be final for application of § 2254, and that finality occurs at "the conclusion of direct review or the expiration of the time for seeking such review" under state law. *See Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (discussing finality of a state court conviction and sentence for purposes of applying the AEDPA's limitations provisions). Applying state and federal law relevant here, a Louisiana defendant's conviction generally is final thirty (30) days after the appellate court renders its direct appeal opinion, unless the defendant timely files a writ application in the Louisiana Supreme Court for review of the appellate court's ruling. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)); La. Code Crim. P. art. 922 (addressing finality of appeal judgment); La. S. Ct. Rule X§5 (time for seeking review in Louisiana Supreme Court).

In this case, Clanton was sentenced after her convictions, and her direct appeal was timely filed in the Louisiana Fourth Circuit. As noted by the State, the later filing of the multiple bill left open the potential for a change in her sentence and another opportunity to appeal any new sentence imposed upon her as a multiple offender. However, on January 25, 2021, several months after the filing of this federal petition, the State withdrew the multiple bill. There is nothing left pending in any state court. As of this writing, Clanton has filed no other appeal, writ application, or application for state court post-conviction review.[22] Thus, Clanton's convictions and sentences would appear now to be final. The Louisiana Fourth Circuit affirmed her conviction and resolved her initial appeal on November 6, 2019. She did not seek review of that ruling at the time or after

---

[22] A member of the Court's staff contacted the clerks' offices for the Louisiana Fourth Circuit and Louisiana Supreme Court to confirm that no matters are pending in either court. The state trial court's Docket Master also shows no matters pending in that court. ECF. No. 14.

it was issued. She was sentenced on September 6, 2018, and she has sought no review of that initial sentence. The multiple bill was dismissed more than 30 days ago, and she has sought no state court review of anything since that time. As a matter of arithmetic, Clanton's state court convictions and sentences are now final.

More relevant to this opinion, Clanton has not exhausted state court review of any of her claims in this federal petition. The State correctly recognizes this, but also contends that the claims are now technically exhausted and in procedural default because any attempt to exhaust would now be untimely under state law. For the following reasons, the procedural default should be rejected.

It is true that when a petitioner has failed to exhaust state court remedies and the state court to which petitioner would be required to present her claims would now find the claims to be procedurally defaulted or barred, the claims are procedurally defaulted for purposes of federal habeas review. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). A habeas petitioner who has defaulted her federal claims in this way meets the "technical" requirements for exhaustion, because there are no state remedies left "available" to her. *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996); *see* 28 U.S.C. § 2254(b); *Coleman*, 501 U.S. at 732 (citing *Engle v. Isaac*, 456 U.S. 107, 125-126 & n.28 (1982)). The United States Supreme Court has determined that the exhaustion requirement "'refers only to remedies still *available* at the time of the federal petition,' [and] it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" *Gray*, 518 U.S. at 161-62 (quoting *Engle*, 456 U.S. at 125 n.28, and *Castille v. Peoples*, 489 U.S. 346, 351 (1989)) (emphasis added, citations omitted). Thus, if no review is available, the claim is technically exhausted and in procedural default.

In this case, the record is *not clear* and does not assure that *no* state court remedy is *available* to Clanton for purposes of exhausting review of her federal claims. While she did not file (timely or otherwise) a writ application in the Louisiana Supreme Court after her direct appeal, that did not necessarily end her opportunity for other state court post-conviction relief. There are exceptions under Louisiana law, including the broad interests of justice, to both the timeliness and successiveness of post-conviction review in the Louisiana courts. *See* La. Code Crim. P. arts. 930.4 & 930.8. In other words, even if Clanton returns to the state courts to seek review of the same claims asserted on her direct appeal, there is the possibility that the state courts would review the claims despite their procedural posture. Based on this record, these exceptions might also include consideration of the apparent impediment to post-conviction review created by the prolonged and eventually dismissed habitual offender proceedings in this case.

Until it is clear, or the Louisiana Supreme Court has declared,[23] that no further review is available to Clanton, the Court will not impose a procedural bar based on a presumed technical exhaustion.[24] *Gray*, 518 U.S. at 161-62. The technical exhaustion and resultant procedural default defense should be rejected. Nevertheless, for the reasons that follow, Clanton's petition should be dismissed for her actual failure to exhaust state court review of her claims.

IV. **Exhaustion Doctrine**

The State asserts, and the record demonstrates, that Clanton has not exhausted state court review of her federal claims. The State, therefore, has not waived the exhaustion defense. The United States Fifth Circuit has held that when there is no express waiver, the district court may, in

---

[23] The Louisiana Supreme Court often includes in its post-conviction rulings when a petitioner has fully exhausted state post-conviction review. *See, e.g.*, *State v. McGhee*, 299 So. 3d 51 (La. 2020). Even then, the Court will recognize that there are "narrow circumstances provided in La.C.Cr.P. art. 930.4" which could allow a petitioner to return for successive review. *Id.*

[24] While the Court does not assume that the state courts will allow Clanton to seek further review of her claims, comity would favor allowing the state courts the opportunity to consider it before this Court bars review.

its discretion, address affirmative defenses *sua sponte*. *Prieto v. Quarterman*, 456 F.3d 511, 518 (5th Cir. 2006) (citing *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)) (addressing procedural default); *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations). When a court exercises its discretion to do so *sua sponte*, it must assure that the petitioner has notice that the issue is being considered. *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir.1999); *Magouirk*, 144 F.3d at 358. Therefore, to the extent necessary, the Court hereby gives Clanton express notice that the Court is considering technical exhaustion and procedural default to whatever extent, if any, it is not already clearly asserted by the State. *Fisher*, 169 F.3d at 301; *Magouirk*, 144 F.3d at 358. Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to her that this Court is sua sponte raising the issue of exhaustion and that petitioner must submit any evidence or argument concerning the failure to exhaust as part of any objections she may file to this report**. *Magouirk*, 144 F.3d at 348.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *accord Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to *all* of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20) (emphasis added). The exhaustion requirement is satisfied when the substance of the federal habeas claims have been "fairly presented" to the highest state court in a procedurally proper manner. *Id*. (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)) (emphasis added). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including

9

discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *accord Duncan v. Walker*, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id*. (citing *Nobles*, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

To exhaust review of her claims in the state courts, Clanton must have fairly presented the same claims and legal theories she urges in this federal court to each of the state courts through to the Louisiana Supreme Court in a procedurally proper manner. Clanton simply has not done so. She has not sought review of her claims in the Louisiana Supreme Court after her direct appeal when the claims were raised by her appointed counsel. She also has sought no other state court post-conviction review.

Clanton, therefore, has not given the Louisiana Supreme Court an opportunity to review her federal habeas claims. The record reveals no good cause for her failure to exhaust review of her claims, and there is none apparent from the record. Clanton's federal petition should be dismissed without prejudice to allow her to exhaust available state court review of her claims.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Clanton's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[25]

New Orleans, Louisiana, this  2nd day of March, 2021.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[25] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.